BROOKS et al. v. RAYNOLDS.

(Circuit Court of Appeals, Sixth Circuit. December 24, 1893.)

No. 110.

1. WILLS—CONSTRUCTION—TRUSTS—NATURE OF ESTATE.
    A devise to an executor in trust to apply and expend the income for the benefit of testator's son, "Cassius, and his family," makes the "family" a beneficiary as much as the son, and he has no power to divert from the other members thereof the portion properly applicable for their benefit.

2. SAME—CODICIL.
    This construction is not affected by an item in a codicil, inserted expressly to clear up a contradiction as to the time when the expenditure shall cease, and providing that "the income which is to be expended for the benefit of my son, Cassius, and his family, is to be so expended for his benefit only until the time arrives for the final distribution," for the words "for his benefit" obviously refer to him as the head of the family.

3. SAME—TRUST FOR MAINTENANCE AND SUPPORT—RIGHTS OF CREDITORS
    A devise to an executor in trust directed him to expend one-half the net income "for the benefit of my son, Cassius, and his family," (Cassius being a spendthrift,) or, in the executor's discretion, to pay any part thereof to Cassius in cash; the children of the "family" to be educated and maintained "on a scale comporting with their condition and rank in life;" and if, in the executor's judgment, the entire half of such income could not be thus expended judiciously, the surplus to be held in trust so that it might be applied, as the executor might deem best, for the benefit of "Cassius and his family." *Held,* that this was a gift for the mere maintenance and support of Cassius and his family collectively, and Cassius had no separable interest in such income, which could be subjected by his creditors. 55 Fed. 783, reversed.

4. SAME—DISCRETION OF TRUSTEE.
    The fact that the executor was also given a purely personal discretion to invest any part of the surplus income "for the benefit of Cassius," to be expended for his benefit alone, or paid to him in such amounts as the executor might deem best, gave Cassius no interest, which his creditors could reach, in any part of an existing surplus, when the executor had not in fact invested any part thereof for Cassius alone.

**5. SAME—CONSTRUCTION OF STATUTE.**
The Ohio statute giving judgment debtors an action to reach equitable and other interests which are not subject to levy, (Rev. St. § 5464,) being a part of the Code of Civil Procedure, should not be regarded as dealing with substantive laws of property, but merely as extending the remedy of creditors to property interests not subject to seizure by execution, on account of the narrowness of the common-law writ; and it gives no right to subject income held in trust for mere maintenance and support, and in which the debtor has no vested interest.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Creditors' bill filed by F. A. Raynolds against Cassius B. Hanna, Hattie L. Hanna, his wife, and J. Twing Brooks, executor and trustee of the estate of Robert Hanna, deceased. The bill was based upon the claim that Cassius B. Hanna had, under the will of his father, Robert Hanna, an estate for life, which might be subjected to the payment of his debts, in an undivided one-half of the real and personal property devised and bequeathed by the will in trust to J. Twing Brooks, the executor. On final hearing the circuit court held that Cassius B. Hanna had an equitable interest in an undivided one-fourth of the income. 55 Fed. 783. Both parties appealed; plaintiff contending that Cassius had an undivided half interest which the plaintiff might subject to the payment of his judgment, and the executor and trustee insisting that Cassius had no interest or estate under the will capable of being subjected by the plaintiff. The decree is now reversed and remanded, and a petition for rehearing dismissed.

The appellee, F. A. Raynolds, recovered, in 1888, a judgment in a court of law for $44,941.60 against Cassius B. Hanna and his wife, Hattie L. Hanna. An execution issued, and has been returned nulla bona. Upon this footing this bill was filed to subject an alleged equitable interest arising under certain trusts created by the will of Robert Hanna, father of Cassius. The executor, J. Twing Brooks, denies that Cassius Hanna has any estate or interest under the will of Robert Hanna which may be subjected by his creditors. The circuit court held, on final hearing, that Cassius had an equitable interest, until the final distribution of the estate of Robert Hanna, in an undivided one-fourth of the net income thereof, which might be subjected to the payment of the complainant's judgment. Both parties appealed; the complainant contending that Cassius has an undivided half interest in the income which may be subjected by his creditors; the executor insisting that he has no interest under the bill which can be subjected by complainant.

The clauses of the will which bear upon the questions for consideration are these:

"Item 4. Excepting the household articles devised to my wife in foregoing item three, I devise and bequeath to my executor hereinafter named, in trust to be disposed of by him as hereinafter provided, all my property, real and personal, of any and every description, wherever the same may be situated, and however my interest or title in the same evidenced; I hereby giving my said executor full, ample, and complete power to manage, direct, and control the same, and every part thereof, according to his own best judgment and discretion; also, to rent, sell, or improve the whole, or any part, of my real estate, and in such manner, and upon such terms and conditions, as he may think best, and, in case of sale, either at public or at private sale, as he may deem best, and to make, execute, and deliver deed or deeds in fee for the same. I also hereby authorize and empower him to dispose of, whenever, in his judgment, it will be best for my estate so to do, any and all

of my personal property, stocks, bonds, chattels of every kind, either at public or private sale, and to invest, and from time to time reinvest, in such manner, and in such property, whether real or personal, as he may deem best, the proceeds arising from the rent or sale of my real, and the income or sale of my personal, estate; and, in case of purchase of real estate by him as aforesaid. I direct that the title to the same be taken to himself as executor and trustee of my estate,—it being my wish and purpose to invest my executor hereinafter named with power to manage and control my entire estate according to his own judgment and discretion, the same as I could do myself, if living, and subject only to, and be restrained by, the special limitations herein imposed and expressed by me."

"Item 7. I hereby authorize and direct my executor, as soon as convenient after my death, and in case my son, Cassius, shall so request, to purchase a home for him at a cost not to exceed twelve thousand dollars, taking title to himself as executor and trustee as aforesaid, the same to be kept as and for a home for Cassius, free of rent, so long as he desires so to occupy the same; but in the final settlement of my estate, as hereinafter provided, I direct that the money expended by my executor in insurance, taxes, and assessments on the home so occupied by Cassius, together with six per cent. interest per annum on the cost of said home for the time it shall be so occupied by him, shall be deducted from the amount that is to be paid to Cassius or his children, as is hereinafter provided, or, if my said executor shall deem it best to deduct the amount of said annual insurance, taxes, assessments, and interest from the annual income that is to be paid to Cassius or his children, as hereinafter provided, he is hereby authorized and directed so to do.

"Item 8. So far as the same is practical, in conformity with the other provisions of this will, I desire the income of my estate each year to be applied as follows: First, to the payment of taxes, insurance, assessments, and repairs that may be levied or become necessary to be made on any part of my estate, together with the necessary expenses of the administration of the same, including the compensation hereinafter provided to be paid to my executor. Secondly, to the payment of the annuity of two thousand dollars hereinbefore provided for my wife, Harriet A. Hanna. Thirdly, after the payment of the items hereinbefore mentioned, I desire the remainder of the yearly income or increase of my estate that shall be collected or received to be divided into two equal parts, one part to be expended by my said executor for the benefit of my son, Cassius, and his family, so long as he (Cassius) shall live; or, in case my said executor deem it proper and best, but in no event otherwise, he may pay the whole or any part of such portion of the yearly income of my estate (subject, however, to the deduction hereinbefore provided to be made of insurance, taxes, assessments, and interest on the cost of the home to be provided for him as mentioned in item 7) to my son, Cassius, in cash. The other of the said equal parts of which the net yearly income of my estate is to be divided as provided in this section I direct my executor to expend for the benefit of the children of my deceased daughter, Arrial T. Whitaker, in such manner that each of the children shall have an equal and the same portion of said part with the other. In case any of said children of my daughter, Arrial, should die without issue before the final division of my estate, then the share of the income of my estate of such child or children so dying shall be divided between the other children of my daughter, Arrial, or the issue of them, they in such to take per stirpes and not per capita; and in such case any of the said children of my daughter, Arrial, should die before the final distribution of my estate, leaving issue, I direct that the share of the income of my estate which should be coming to such child of Arrial if living shall be paid to the issue of such child, share and share alike; and I hereby authorize my executor to pay in cash, if he shall deem best, the whole or any part of such share of the income of my estate as may be due to each of the children of my daughter, Arrial, as aforesaid, he to take, in such case, the receipt of the guardian or such other person who, for the time being, may be charged with the care or custody of said children, or either of them, for any payment so made; and in the expenditure of income for the benefit of my son, Cassius,

and his family, as well as for the children of my daughter, Arrial, ᴵ desire
my executor to have in view the maintenance and education of my grand-
children on a scale comporting with their condition and rank in life; and if,
in the judgment of my said executor, the net annual income of my estate,
as above described, cannot all be properly and judicially expended or ad-
vanced to Cassius and his family and to the children of Arrial, as herein-
before described, I authorize and direct my executor to invest such surplus
as may remain after what he deems a reasonable expenditure has been made
for the benefit of the child or grandchild who would be entitled to it under
the foregoing plan of distribution.

"Item 9. I will and direct that my executor shall continue to control and
manage my estate, and distribute and invest the annual income of my estate,
as hereinbefore provided, from year to year, until the youngest child of
my daughter, Arrial, then living, shall come of age, or until such further
period as, in his opinion, the welfare of my son, Cassius, or of my grandchil-
dren, will be thereby promoted, and whenever it shall so seem prudent to
my executor, but in no event until then.    I authorize and direct him to divide
and distribute the whole of my estate among my grandchildren, share and
share alike, to each that may be living at the time of such distribution, or
if, before such final distribution, any of my said grandchildren shall have
died leaving issue, the issue of such deceased grandchild shall take the share
that would be due to such grandchild if he or she were living, share and
share alike.    And I hereby authorize my executor, if at any time it shall seem
suitable and prudent to him, to advance any portion of the final share of
my estate to either of my grandchildren that would be due to them under the
plan of distribution herein provided, and in such final settlement I direct my
said executor to invest a portion of the share hereinbefore provided for each
of my grandchildren in a home for such grandchild, in which said child
shall have a life estate, with the remainder to his or her heirs, it being my
wish and purpose that each of my said grandchildren shall be secured in a
home beyond any contingency during the period of his or her life; provided,
however, that such final distribution of my estate shall in no event be
made during the lifetime of my wife, Harriet A. Hanna, nor shall ad-
vances be made to my grandchildren, as hereinbefore provided, to such an
extent as to impair the annuity of two thousand dollars which is to be
paid to my wife as aforesaid: and provided, further, that before any such
advances are made, or before any advances are made as hereinafter pro-
vided may be made, to my son, Cassius, for the benefit of himself and
his children, and in any event before the final distribution of the principal
of my estate, as aforesaid, shall be made, I wish and direct my executor to
ascertain the amount of advances of money I shall have made during my
lifetime to my son, Cassius, in excess of what I shall have made to my
daughter, Arrial, or to her and to her children together, and deduct the
amount of such excess as it may exist at the time of my death (interest at
the rate of six per cent. per annum being added thereto from the time of
my death) from the sum total of my estate, which amount so deducted shall
be divided equally between the children of my daughter, Arrial, and their
issue, per stirpes, it being my wish thus to equalize, between my children and
the descendants of each of them, the benefits of my estate.

"Item 10. In order to encourage my son, Cassius, to habits of business
and economy, and to acquire a proper regard for property and its value, I
hereby authorize my executor, in case he shall deem it prudent and proper so
to do, but in no event otherwise, to make advances from the principal of
my estate to my son, Cassius, for the benefit of himself and his family, in
such amounts and at such times as to him, my said executor, shall deem it
prudent and safe; but in no event shall such advances be made to such
an extent as to impair the annuity herein provided for my wife, nor shall
they be so great in amount as, combined with the excess of advances made
to him during my lifetime over those made by me to my daughter, Arrial,
or to her and her children together, (interest from the time of my death being
added thereto at six per cent. per annum,) would amount to one-half the prin-
cipal sum of my estate, and provided that the amount of any advances, as
aforesaid, that may be made to my son, Cassius, by my said executor, shall be

deducted by my said executor from the amount that would be due to the children of my son, Cassius, under the foregoing plan of the final distribution of my estate mentioned in item nine of this, my will."

Also the following items of the codicil to said will:

"Item 1. Believing it to be for the best interest of my estate, and of all those who are, or may be, interested in the same, I do hereby revoke, cancel, and annul the whole of item 10 in said will, beginning with the words, 'In order to encourage;' and ending with the words, 'item nine of this, my will;' and I hereby declare said item ten, (10,) and every part thereof, to be no longer any part of my said last will and testament.

"Item 2. In order to settle definitely, and make forever free from dispute, that portion of item eight (8) of my said last will which relates to the division and distribution of the annual net income of my estate, I hereby declare it to be my wish and will, and I do hereby accordingly direct, that the one-half of said yearly net income which is to be expended for the benefit of my son, Cassius, and his family, is to be so expended for his benefit only until the time arrives for the final distribution of my estate which shall be made under the provisions of said will; and to this extent are the words in said will directing said portion of income to be expended for his benefit, 'so long as he (Cassius) shall live,' to be modified and controlled; also, that the one-half of the said annual income which is to be expended for the benefit of Cassius, as aforesaid, shall, until expended or otherwise disposed of, as provided in said item, be held and kept by my said executor in his possession in trust, to the end that the same may be applied as my said executor shall deem best, and not otherwise, for the benefit of my son, Cassius, and his family; also, that any portion of said share of income which may be invested for the benefit of Cassius shall likewise be held and kept in his possession in trust by my said executor, the same to be expended for Cassius' benefit, or paid to him at such time, and in such amounts, as he (my said executor) may deem best, and not otherwise.

"Item 3. Unless my executor shall have sooner made a final distribution of my estate under the powers granted in my said will, I hereby will and direct that such final distribution be made as soon as may be after the death of my son, Cassius, provided at that time the youngest child of my daughter, Arrial, then living, shall have reached the age of majority."

"Item 5. In event that my son, Cassius, should have no children living, nor grandchildren living, at the time of the final distribution of my estate, as provided in my said will, I direct my executor to retain in his own custody and possession one-half of the whole estate as it may then exist, and hold the same in trust so long as Cassius may live, giving to Cassius so much of the annual net income of said one-half as he may deem best, and at the death of Cassius said one-half of my estate so retained and held to be by said executor distributed per stirpes among the children and grandchildren of my daughter, Arrial; the other half of my estate, in the event spoken of in this item, to be divided between the children of, and grandchildren of, my deceased daughter, Arrial, in the manner set forth in my will, whenever such final settlement shall take place."

There was evidence submitted from which it appeared that the testator's family, at the making of his will in 1876, and of the codicil in 1881, consisted of his wife, his son, Cassius, and three children of a deceased daughter, Arrial. Cassius was himself a man of family, consisting of a wife and two children. The testator's widow was amply provided for by provisions of the will unnecessary to be stated. Before the institution of this suit she died. Cassius, his wife and two children, are living, as is also the case with the three children of Arrial. At the date of the will, Cassius was a man of spendthrift habits, and hopelessly involved in debt. Item 10 of the will, when read in connection with item 1 of the codicil, made five years later, and shortly before the death of testator, indicates the habits and financial condition of Cassius, and that at the later date his father had despaired of his reformation. The large debt due to complainant, Raynolds, had been incurred when the codicil was drawn. There was evidence, independent of the intimations found in the will and codicil, that the testator was fully aware of the bankrupt condition of Cassius and his want of business habits.

Francis J. Wing and J. Wm. Ball, for plaintiff.

Estep, Dickey, Carr & Goff and Lawrence Maxwell, Jr., for defendants.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

After stating the facts, the opinion of the court was delivered by LURTON, Circuit Judge:

The character of the interest which the judgment debtor, Cassius Hanna, has in the trust founded by his father, depends upon the true construction of his will. That he has no interest whatever in the corpus of the estate is conceded. Whatever interest he has is limited to the one-half of the income of the fund devised to the executor, Brooks. The other half of the income is wholly devoted to the children of the testator's deceased daughter, Arrial. Whether Arrial's children take vested interests in their half of the income, or merely a support and maintenance out of the income, is wholly unimportant. The trusts in behalf of Cassius and the children of Arrial are distinct. The one in no way depends upon the other. The terms of the will creating them are not identical. The conditions surrounding the testator when he made his will, calculated to aid in the interpretation of his intent as to Cassius, were so different from those bearing upon his purpose as to the children of Arrial, that the character of the one trust would not materially aid in the interpretation of the other. Two views are presented by the learned counsel for the creditor as to the true construction of so much of the will as relates to the interest of Cassius in the income:

The first is that raised by the error assigned by complainant, Raynolds, on his cross appeal, to wit, that the interest of Cassius extends to the whole of one-half of the income, and not one-fourth, as ruled by the circuit court. This position excludes the "family" of Cassius from all status as beneficiaries. Such a construction would operate to make for the testator a new will. "Cassius and his family" are distinctly made the beneficiaries as to one-half of the income. There is just as much authority for excluding Cassius as a beneficiary as there is for excluding those who are designated as "his family." This is not a bequest to Cassius for the benefit of his family, or to him as a parent for the purpose of educating and maintaining his children. It does not fall within the principle of Hadow v. Hadow, 9 Sim. 438, or Browne v. Paull, 1 Sim. (N. S.) 92. Those cases involved legacies to a parent for the purpose of maintaining and educating children. They were decided upon the ground, as stated by the vice chancellor in Browne v. Paull, "that when, during the minority of a child, the interest of such child's legacy is directed to be paid to the parent, to be applied for or towards its maintenance, there the direction as to the application is a mere charge for the benefit on what is substantially a gift to the parent subject to such charge." See, also, Perry, Trusts, §§ 117, 118, and cases cited.

In those cases the parent was held bound to furnish reasonable

maintenance and support, but was held entitled to any surplus of income. Neither furnishes the slightest authority for supposing that, even in regard to trusts of that kind, the parent could have appropriated, or, a fortiori, a creditor of the parent, the fund to his own use and purposes, without maintaining the children. The wife and children could, in equity, enforce its proper appropriation. Chase v. Chase, 2 Allen, 101; Raikes v. Ward, 1 Hare, 445.

In this case we are dealing with a devise, not to Cassius, charged with a trust, but to the defendant Brooks, who is to apply and expend the income for the benefit of "Cassius and his family." The intent of the testator with respect to the children of the "family" is most plainly impressed as a trust, to be executed by the trustee, by the clause of the fourth item where, in regard to the expenditure of the income, the testator declares that "in the expenditure of income for the benefit of my son, Cassius, and his family, as well as for the children of my daughter, Arrial, I desire my executor to have in view the maintenance and education of my grandchildren on a scale comporting with their condition and rank in life."

The power, at the discretion of the executor, to pay over the income in cash to Cassius, would, if exercised, have made him a sub-trustee, and accountable certainly for the maintenance and support of the others who composed his family. That power has, however, never been exercised. The discretion of the executor as to whether he will do so, or himself expend the fund, is not subject to judicial control.

But it has been pressed upon us that the second item of the codicil, in express terms, declares that this income is to be expended for the "benefit of Cassius only," and that this change was made, "as announced by the testator himself, to settle definitely what might otherwise be a ground of dispute between beneficiaries." If the whole of the item is read together, it will be most apparent that the testator was dealing with the question as to the duration of the scheme for the distribution and expenditure of the annual income. Item 8 of the will had directed that the one-half of the net income of the estate should "be expended by my said executor for the benefit of my son, Cassius, and his family, so long as he (Cassius) shall live." By item 9 of the will the executor is directed to continue to control and manage the estate, and distribute the income as before directed, "until the youngest child of Arrial then living shall come of age," when he is directed to divide and distribute the whole of the estate among the grandchildren of the testator, share and share alike, etc. The same clause gave to the executor the power to postpone this division "if, in his opinion," the welfare of his son, Cassius, or of his grandchildren, should be thereby promoted, until such time as he should think "prudent," "but in no event until then."

By another provision of the same item a distribution might be hastened by advancing to any grandchild a part, or the whole, of the share to which such grandchild should be entitled, provided such advancement should be deemed suitable and prudent to the executor, and subject to the further provision that the final dis-

tribution should not be hastened so as to occur before the death of
the testator's widow, nor advancements made to individual grand-
children during her life which would impair or affect the annuity
provided for the widow. Thus, by item 9, the final distribution
of the estate might be made, in the discretion of the executor, at
any time after the death of the widow, or at the arrival at age of
the youngest daughter of Arrial, or any time thereafter, if the ex-
ecutor saw fit to postpone it; but by item 3 of the codicil a final
distribution was required at the death of Cassius, provided the
youngest child of Arrial was then of age.

When such final distribution should occur it would, of course,
terminate the trust for the benefit of "Cassius and his family" out
of the income. This distribution might occur before the death of
Cassius. Yet, by item 8 the income was to be distributed so long
as Cassius should live. This was a contradiction. This is the
doubt settled by item 2 of the codicil.

To make clear the duration of this expenditure for the benefit
of Cassius and his family, the testator, by the codicil, declared
that "in order to settle definitely, and make forever free from dis-
pute, that portion of item eight (8) of my said last will which re-
lates to the division and distribution of the annual net income of
my estate, I hereby declare it to be my wish and will, and I do
hereby accordingly direct, that the one-half of said yearly net in-
come which is to be expended for the benefit of my son, Cassius,
and his family, is to be so expended for his benefit only until the
time arrives for the final distribution of my estate shall be made
under the provisions of said will; and to this extent are the words
in said will directing said portion of income to be expended for
his benefit 'so long as he (Cassius) shall live' to be modified and
controlled."

The testator obviously meant that this income "is to be so ex-
pended for his benefit only until the time arrives for the final dis-
tribution," as fixed by item 9 of his will. "Only" qualifies the dura-
tion of the expenditure for "his benefit," and should be so punc-
tuated and read. The words "for his benefit," in same clause, refer
to him as the head of his family, and are not intended, when read
with the context, to limit the benefit of the expenditure to him
personally.

We are, upon these considerations, clearly of opinion that the
"family" of Cassius are express objects of the testator's bounty,
and have the same interest in the income that he has.

The second proposition as to the construction of the will is pre-
sented by a most learned and able opinion by the circuit judge
who heard the case below. The view taken by the judge is com-
prehended in his conclusion that "there is nothing to indicate that
it was the intention of the testator to limit and confine the applica-
tion of the trust fund to the personal support of the designated
beneficiaries; on the contrary, it clearly appears that the provision
was for their general benefit." He also thought that, in a case
where the income was applicable to the "general benefit" of the
cestui qui trust, the interest of each was separable and appor-

tionable, and was such an interest as could be subjected by creditors of any of the beneficiaries. As to the method of apportionment he said:

"How the trust fund in question should be divided between Cassius and his children is a matter not free from doubt or difficulty. Taking an equitable view of it, the apportionment should be made between them so as to assign or allot one-half thereof to Cassius, and one-half to his children, thus making Cassius' share from the net yearly income of the estate one-fourth of the whole."

We find ourselves unable to adopt these conclusions. If the interest of Cassius is apportionable, and is subject to attachment, then a fortiori it must be one which is alienable. If alienable and attachable, then it must be one which he could anticipate. If an interest of the foregoing character, then what is there to prevent Cassius from demanding his proportion from the trustee in cash, and enforcing his demand by suit? If he has an interest of that kind, then each of those composing "his family" have a like interest, and a like right of anticipation, and a like right to alien, for we have already decided in the foregoing part of this opinion that each person composing his family had an equal interest in the bounty of the testator with Cassius. When this will was made, Cassius was hopelessly in debt. He was financially worthless, a confirmed spendthrift, and unable to appreciate the proper use of property or its value. This state of things was well known to the testator when he made this will. Yet Cassius was his son. He could not ignore his obligation as a father. Cassius had a wife and two sons. These were objects worthy of the testator's bounty, and their condition doubly appealed to his affection and his duty. If he gave to Cassius a child's part of his estate, he threw it to his creditors. Every word and line of the will indicates that it was written with a view to the deplorable situation of his son and the helpless dependency of that son's family. These attending circumstances may, and ought to, be taken into consideration in ascertaining the intent of this testator. "The interpreter may place himself in the position occupied by the testator when he made his will, and from that standpoint discover what was intended." Blake v. Hawkins, 98 U. S. 315. That the dominating purpose of the testator in founding this trust was to provide for the support and maintenance of "Cassius and his family" collectively seems to us clear when we read the will by its four corners, in the light of the circumstances under which it was made.

It is hardly necessary to observe that if this was a simple gift of the interest or income of this fund, with no other limitation or qualification than that it was "for the benefit of Cassius," it would give to him a vested interest in the income. A gift "for the benefit of another" would be a mere general expression of the motive of the testator, and would impose no obligatory limitation upon the manner of enjoyment. Aprecce v. Apreece, 1 Ves. & B. 364; Dawson v. Hearn, 1 Russ. & M. 606; Ford v. Batley, 17 Beav. 303; Yates v. Compton, 2 P. Wms. 308; In re Skinner's Trust, 1 Johns.

& H. 102; In re Sanderson's Trust, 3 Kay & J. 497; Henson v. Wright, 88 Tenn. 507, 12 S. W. 1035.

In the case last cited the devise was to a trustee of land. The trustee was directed to hold said lands "for the benefit of said W. A. Hamilton only, and to account to him for the rent or yearly issues of said land," "for the only proper use and benefit of him (the said W. A. Hamilton) for and during his natural life." The trustee and beneficiary united in a conveyance of the lands for the life of said Hamilton, there being a valid devise over to others at his death. This conveyance was sought to be set aside upon the ground that the trust was one for the maintenance and support of the beneficiary, and that the power of alienation was therefore withheld by implication, as repugnant to the purposes of the testator. The Tennessee court said:

"These words do not limit the interest of the cestui que trust to a support and maintenance, or declare the object of the trust to be to make provision for his support. They only operate to declare a distinct trust for the sole and only 'benefit' of Hamilton during his life. A trust may be so created that no interest vests in the beneficiary,—as, when it is limited to the support and maintenance of the beneficiary, and he is prohibited from alienation or anticipation; so, when the income is to be paid over only in the discretion of the trustee, or when it can only be applied for a special use, such as education or support. In all such cases the purposes of the trust would obviously be defeated if the beneficiary could assign or alienate. But whenever the absolute equitable interest is vested in the cestui que trust, and there is no prohibition upon his power of alienation, the incidents of ownership attach, and the interest is assignable." "It is difficult to see," said the court, "how this trust would be breached by an assignment of the rents accrued or to accrue. These rents would, in such case, have been applied to the 'only use and benefit' of the beneficiary, just as effectually as if paid into his hands."

But here we find the words, "for his benefit" qualified, and direction given as to how it should be used "for his benefit,"—how expended and applied. The subsequent limitations which operate, read in the light of the surroundings under which the will was made, to so qualify this gift as to cut it down to one for maintenance and support, are found when we consider these circumstances:

(1) The income was not to be paid into the hands of Cassius, save in the absolute discretion of the trustee, but was to be "expended" by the trustee.

(2) It was not to be expended on Cassius, or for his exclusive benefit, but for "the benefit of Cassius and his family." The "family," as a distinct unit, was in the mind of the testator, and the "family," of which Cassius is a member and the head, as an object of the testator's anxious care, is made the recipient of his bounty. Upon this "family" the income is to be "expended." Looking to the condition of Cassius, the relation he bore to the testator, the natural affection of the grandfather for the children of his son, and their utter helplessness, we can read no other meaning than that, by the requirement that the income shall be expended for the benefit of that son and the family of that son, the testator meant that the expenditure should be for the support and mainte-

nance of that family as a family, and the support and maintenance of that son as a member of that family.

(3) The direction that the children of this family shall be educated and maintained "on a scale comporting with their condition and rank in life" supports this view.

(4) The language of the testator reposes in the executor a discretion as to whether the whole, or only a part, of the income shall be expended for the benefit of Cassius and his family. The will is explicit as to this, and is in these words:

"And if, in the judgment of my said executor, the net annual income of my estate, as above described, cannot all be properly and judiciously expended or advanced to Cassius and his family and to the children of Arrial, as hereinbefore described, I authorize and direct my executor to invest such surplus as may remain, after what he deems a reasonable expenditure has been made, for the benefit of the child or grandchild who would be entitled to it under the foregoing plan of distribution."

As to this surplus a further direction is given in the second item of the codicil, by which it is provided that the one-half of the income to be "expended for Cassius and his family" "shall, until expended or otherwise disposed of, as provided in said item, be held and kept by my said executor in his possession in trust, to the end that the same may be applied as my executor may deem best, and not otherwise, for the benefit of my son Cassius and his family."

This is applicable to any surplus of income in the hands of the executor. It is to be "kept" and applied as the executor may deem "best, and not otherwise," for the benefit of Cassius and his family; that is to say, it is to continue income, and subject to the same trusts. Thus, the larger income of one year will help out the shorter receipts of another. The needs of one year may greatly exceed those of another, and provision is made for this possible condition by giving the executor direction to keep such surplus income for such use and purposes as may require it. Under item 8 of the will the executor had been required to invest any surplus "for the benefit of the child or grandchild who would be entitled to it under the foregoing plan of distribution." Counsel for complainant, Raynolds, read this as if it were a direction that unexpected income should become the exclusive property of Cassius, and that this interest was to be invested for Cassius, and that this, at least, they might reach as subject to his debts. The better opinion, looking alone to that item, would seem to be that the testator had no such meaning; that the phrase, "for the benefit of the child or grandchild," entitled to such income "under the foregoing plan of distribution," was a mere direction that the half which was intended for the children of Arrial should be invested for their benefit, while the other should be invested for the like benefit of those entitled to it. But, however this may be, there has been no such investment. There has been, and is, an unexpended balance of income. This the executor holds in trust, as directed by item 2 of the codicil, already quoted.

By the concluding clause of this last referred to item the executor is given power, if he shall so choose, to invest the surplus in-

come "for ·the benefit of Cassius," to likewise hold and keep such invested balance in trust, "the same to be expended for Cassius'· benefit, or paid to him at such times, and in such amounts, as he (my said executor) may deem best, and not otherwise."

Until he has exercised this discretion,· and invested the excess for the benefit of Cassius, no interest has vested in him under this power.

Looking to both item 8 of the will and item 2 of the codicil, we conclude:

(1) That the executor may use his reasonable discretion as to whether the whole of the income shall be annually expended.

(2) That, if he does not deem it judicious to expend the whole, he may retain in trust such surplus as unexpended income, to be used afterwards by him as income for·the maintenance and support of Cassius and his family.

(3) That in his discretion he may invest such surplus income for the "benefit of Cassius," thus devoting it exclusively to his benefit. This power to direct surplus to the exclusive benefit of Cassius is not an imperative trust, is purely discretionary, and cannot be controlled.

(4) No such power has been exercised, and there is no fund invested exclusively for the benefit of Cassius, and therefore no question before us as to the rights of his creditors in such an event.

We have, then, a case where the trust is for the maintenance and support of Cassius as one of the "family," collectively the objects of the testator's bounty. Under such a trust, Cassius has no such vested separable interest as can be reached by his creditors. That which is given to him is not the income of the fund, or any separable part of the income. The trust, apart from the absolutely discretionary powers of the executor, is for his maintenance and support. This is all that he can compel the executor to furnish. Neither can he, as a matter of absolute right, demand this separate, and apart from his family. In the discretion of the executor he might be separately provided for, but he has no strict legal right to demand it. Neither is the executor obliged to use the whole income if a less sum, in his discretion, is abundant. He may provide for unexpected deficiencies in the income by economy, when it is not essential to use all. He may provide against unusual demands by an accumulation. If he thinks best, he may invest the whole, or any part, of this accumulation for the benefit of Cassius. His judgment as to this cannot be controlled so long as he acts in good faith. If he makes no such appropriation of surplus, and does not afterwards use it, this surplus would follow the principal at distribution, and must go as the capital goes.

This is upon the principle, as stated in Hanson v. Graham, 6 Ves. 249, "that nothing more than a maintenance can be called for, —what can be shown to be necessary for maintenance,—however large the interest may be; and therefore what is not taken out of the fund for maintenance must follow the fate of the principal. whatever that may be." To the same effect is the opinion in Re Sanderson's Trust, 3 Kay & J. 497. The circuit judge thought

that there was neither an express nor implied direction that any part of the income should follow the corpus. As to the excess, he said "that the trustee was undoubtedly invested with a discretion as to the amount of the income he would pay over in cash or expend for the beneficiaries," and that "this discretion, so long as honestly and reasonably exercised, a court of equity could not, or would not, control, but that the surplus or residue of the income not so distributed was required to be invested for the benefit of the cestui que trust entitled." We think the learned judge did not give due weight to the effect of item 2 of the codicil in modifying item 8 as to this surplus. If he is not under obligation to invest for the benefit of Cassius, and is not under obligation to spend the whole of the interest, and if the beneficiaries can call only for maintenance, support, and education, then, on the principle above stated, there is an implied direction that the unexpended and uninvested income shall follow the fate of the corpus.

It is also to be noted that there was no imperative requirement, after the widow's death, as to the continuance of this trust for maintenance. After her death the executor could terminate the trust by advancing the grandchildren their respective shares if he thought it fit and best; or he could wait until the youngest child of Arrial should reach her majority, and then distribute. The trust is not to continue for the life of Cassius, save in the discretion of the executor.

In the view we have taken of this trust, it is one under which no interest in the income has vested in Cassius. He has, therefore, by necessary implication, no power to anticipate it, and none of alienation. The trust is one for a specific purpose, and is such a one as, under the weight of authority, neither the cestui que trust nor his creditors nor his assignees can defeat or divert from the appointed purposes. The case of Godden v. Crowhurst, 10 Sim. 643, is much in point. In brief, that case was this: The testator bequeathed his residuary estate to trustees, with direction that the interest upon it should be paid to his son for life, and, after the son's death, to his wife and children. The will then directed that, if the son should assign or charge the interest to which he was entitled for life, or attempt or agree to do or commit any act whereby the same, or any part thereof, might, if the absolute property thereof was vested in him, be forfeited to, or become vested in, any person or persons, then the trustees should pay and apply the said interest for the maintenance and support of his son, and any wife or child or children he might have, and for the education of such issue as the trustees should, in their discretion, think fit. Some years after the testator's death the son became a bankrupt. The assignee sought to recover the interest upon the fund. It was held that the trust for the benefit of the son, his wife and children, was valid, and that the assignee was not entitled to any part of the provision.

The vice chancellor, among other things, said:

"That this fund, if it be given at all, is given collectively, and not distributively, for the maintenance and support of the son, and any wife and

child or children he may have. The word 'or,' there, is merely addressed to children, collectively, as the substitutes for a single child. It is not a word of distribution which separates the son from the wife, or the wife from the child. I so express myself because, according to my apprehension, this is a clause in which whatever benefit is intended is given, collectively, to the son and the wife and the children; and it appears to me that that is the grammatical construction, for the reason I have stated. Then the property is given 'for the maintenance and support of my said son, and any wife and child or children he may have, and for the education of such issue, or any of them, as they, (my said trustees,) for the time being, shall in their discretion think fit.' Now, there is nothing in point of law to invalidate such a gift, that I am aware of. It does not follow that anything was, of necessity, to be paid; but the property was to be applied, and there might have been a maintenance of the son and of the wife and of the children without their receiving any money at all. For instance, the trustees might take a house for their lodging. and they might give directions to tradesmen to supply the son and the wife and the children with all that was necessary for maintenance; and therefore my opinion is that I am not at liberty to take this as a mere gift for the benefit of the son simply, but it is a gift for his benefit in the shape of maintenance and support of himself jointly with his wife and children; and, if that is the true construction of the gift in question, the result is that the assignees are not entitled to anything."

Mr. Perry on Trusts, in section 386a, expresses the principle upon which we have proceeded. That learned author, after expressing certain views as to trusts in restraint of alienation and anticipation not necessarily involved here, says:

"But a trust may be so created that no interest vests in the cestui que trust; consequently, such interest cannot be alienated, as where property is given to trustees to be applied, in their discretion, to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion; so, if property is given to trustees to be applied by them to the support of the cestui que trust and his family, or to be paid over to the cestui que trust for the support of himself and the education and maintenance of his children, in short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities, and is in other respects legal, neither the trustees nor the cestui que trust nor his creditors or assignees can divest the property from the appointed purposes. Any conveyance, whether by operation of law or by the act of any of the parties, which disappoints the purposes of the settler by divesting the property or the income from the purposes named, would be a breach of the trust. Therefore, it may be said that the power to create a trust for specific purposes does, in some sort, impair the power to alienate property."

The supreme court of the United States have, in the clearest terms, upheld trusts for the support and maintenance of a beneficiary. The case of Nichols v. Eaton, 91 U. S. 716, is an instructive one. By the will of Mrs. Eaton she devised her estate to trustees, upon trusts to pay the rents, profits, and income to her four children equally during life. There was a provision against alienation and insolvency by which, upon bankruptcy or insolvency, or an attempted alienation, the trust should terminate, and the income go over to the wife and children of the beneficiary. That a devise of income, to cease upon insolvency or alienation, with a limitation over, was good, was not a question of serious contest. Under the well-settled rule of the English courts of equity such cessor and limitation over had been always held valid. Brandon v. Robinson, 18

Ves. 429. The controversy was over another provision, by which, in case of the bankruptcy of one of the sons without wife or children, (which was the case with respect to the bankrupt whose interest was in controversy,) it was provided that "it shall be lawful, but not obligatory, on her trustees, to pay to said bankrupt or insolvent son, or to apply to the use of his family, such and so much of said income as said son would have been entitled to in case the forfeiture had not happened."

The contention was that this provision was designed to evade the policy of the law which made void any arrangement by which the beneficial enjoyment was to be secured to one, free from liability for debts. It was insisted that the discretion vested in the trustees is equivalent to a direction, and that it was well known that it would be exercised in favor of the bankrupt. The court, through Mr. Justice Miller, after stating that the doctrine relied upon by the assignees who sought to reach the income as an asset of the bankrupt was opposed by the case of Twopeny v. Peyton, 10 Sim. 487, and Godden v. Crowhurst, Id. 642, said:

"No case is cited, none is known to us, which goes so far as to hold that an absolute discretion in the trustee—a discretion which, by the express language of the will, he is under no obligation to exercise in favor of the bankrupt—confers such an interest on the latter that he or his assignee in bankruptcy can successfully assert it in a court of equity or any other court. As a proposition, then, unsupported by any adjudged case, it does not commend itself to our judgment on principle. Conceding, to its fullest extent, the doctrine of the English courts, their decisions are all founded upon the proposition that there is somewhere in the instrument which creates the trust a substantial right—a right which the appropriate court would enforce —left in the bankrupt after his insolvency, and after the cessor of the original and more absolute interest conferred by the earlier clauses of the will. This constitutes the dividing line in the cases which are apparently in conflict. Applying this test to the will before us, it falls short, in our opinion, of conferring any such right upon the bankrupt. Neither of the clauses of the provisos contains anything more than a grant to the trustees of the purest discretion to exercise their power in favor of testatrix's sons. It would be a sufficient answer to any attempt on the part of the son, in any court, to enforce the exercise of that discretion in his favor, that the testatrix has in express terms said that such exercise of this discretion is not 'in any manner obligatory upon them,'—words repeated in both these clauses. To compel them to pay any of this income to a son after bankruptcy, or to his assignee, is to make a will for the testatrix which she never made, and to do it by a decree of a court is to substitute the discretion of the chancellor for the discretion of the trustees, in whom alone she reposed it. When trustees are in existence and capable of acting, a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument under which they act, (Hill, Trustees, 486; Lewin, Trusts, 538; Boss v. Godsall, 1 Younge & C. Ch. 617; Maddison v. Andrew, 1 Ves. Sr. 60;) and certainly they would not do so in violation of the wishes of the testator."

The case of Holmes v. Penney, 3 Kay & J. 90, may be cited as fully supporting the proposition that, under a trust for the maintenance of a number of persons as a family, the trust is valid, and no one of the beneficiaries has a separable interest. There are many American cases holding like views. Among them may be cited Rife v. Geyer, 59 Pa. St. 393; Wells v. McCall, 64 Pa. St. 207; Holdship v. Patterson, 7 Watts, 547; Chase v. Chase, 2 Allen, 101; Leavitt v.

Beirne, 21 Conn. 1; Nickell v. Handly, 10 Grat. 336; Perkins v. Dickinson, 3 Grat. 335; Davidson v. Kemper, 79 Ky. 5; Hall v. Williams, 120 Mass. 344; Slattery v. Wason, 151 Mass. 266, 23 N. E. 843; Jourolmon v. Massengill, 86 Tenn. 88, 5 S. W. 719; State v. Hicks, 92 Mo. 439, 4 S. W. 742; Smith v. Towers, 69 Md. 77, 14 Atl. 497, and 15 Atl. 92.

The decision has been rested upon a construction of the will which brings the trust within the extremest doctrine of the English courts as to bequests for the maintenance and support of more than one cestui que trust. We do not thereby intend to be understood as assenting to the proposition maintained by those courts, that the power of alienation is a necessary incident to a life estate in rents, dividends, or income. That doctrine is not necessarily involved. The great weight of American authority seems to be against the extreme view of the English courts. See the cases cited above.

The decree must be reversed and remanded, that the bill may be dismissed, in accordance with the views herein expressed.

---

## On Rehearing.

### (February 5, 1894.)

LURTON, Circuit Judge. A petition for rehearing has been presented and fully considered. The points made are four in number: The first calls attention to section 5464, Rev. St. Ohio, and insists that, under that section, any interest of Cassius Hanna in the trust created by his father's will, though such an interest be nothing more than a support and maintenance, is subject to the demands of his creditors. That section is in these words:

"When a judgment debtor has not personal or real property subject to levy on execution sufficient to satisfy the judgment, any equitable interest which he has in real estate, as mortgagor, mortgagee, or otherwise, or any interest he has in any banking, turnpike, bridge, or other joint stock company, or in any money contract, claim or chose in action, due or to become due to him, or in any judgment or order, or any money, goods or effects which he has in the possession of any person, or body politic or corporate, shall be subject to the payment of the judgment, by action."

This statute was not deemed to have any application to a trust where the beneficiary had no right to demand any distributive part of the income, and under which the trustee was to apply and personally expend the income in the maintenance and support of the debtor as one of a family collectively to be maintained. The trustee, in his discretion, might pay over the income in whole or in part. That discretion could not be controlled. The trust, as we construed it, gave the trustee the right to refuse to Cassius a separate support, and it gave him the absolute and uncontrolled right to refuse to pay over a dollar of the income in money. If we were right in the construction we placed upon this trust, it is within the principle of Godden v. Crowhurst, 10 Sim. 648; Holmes v. Penney, 3 Kay & J. 90; Hill v. McRae, 27 Ala. 175; Hall v. Williams, 120 Mass. 344; and Nichols v. Eaton, 91 U. S. 716. In Godden v. Crowhurst, supra,

the vice chancellor said, concerning a trust in this respect like the one under consideration:

"Now, there is nothing, in point of law, to invalidate such a gift, that I am aware of. It does not follow that anything was, of necessity, to be paid; but the property was to be applied, and there might have been a maintenance of the son and of the wife and of the children without their receiving any money at all. For instance, the trustees might take a house for their lodgings, and they might give directions to tradesmen to supply the son and the wife and the children with all that was necessary for maintenance; and therefore my opinion is that I am not at liberty to take this as a mere gift for the benefit of the son simply, but it is a gift for his benefit in the shape of maintenance and support of himself jointly with his wife and children; and, if that is the true construction of the gift in question, the result is that the assignees are not entitled to anything."

The right to acquire and receive a support in kind, as one of a household or family, is not an interest which is capable of severance or valuation, and is not such an equitable estate or interest in property as can be subjected. In no view of the Ohio statute can a creditor be benefited. But this Ohio statute ought not to be construed as relating to, or dealing with, the substantive laws of property. It is found in the Code of Civil Procedure, and it should be regarded as extending the remedy of creditors to property and property interests not subject to seizure by execution at common law on account of the narrowness of the common-law writ. At common law, the writ of execution was limited in its operation, and was, in addition, confined to those estates recognized by the law as legal estates. Choses in action and equitable interests were not subject to common-law writs. On account of this, the jurisdiction of equity to entertain suits in aid of a creditor had its origin. 3 Pom. Eq. Jur. § 1415. Statutes have been enacted in many states extending common-law remedies, and enlarging equitable jurisdiction in creditors' suits. This Ohio statute is one of this class.

The interest which Cassius has under this trust is not enlarged or otherwise affected by the Ohio statute. The interest which the debtor, Cassius, has in the trust, is not one which can be reached and subjected by a creditor, either at law or at equity.

Another point made in the application for rehearing deserves consideration. The insistence is that income at the end of each year remaining unexpended is absolutely required to be invested for the benefit of Cassius, and that surplus is absolutely the property of Cassius, and therefore subject to his creditors. The view expressed in the opinion was that the executor had a discretion as to whether he would hold such surplus for the common benefit, or invest the same under the provisions of the eighth item of the will; that, having made no such investment, he could not be coerced. The disobedience of the executor to a positive direction to invest such surplus would not operate to diminish the rights of Cassius or his creditors in the fund. If there was a surplus, and it was the duty of the executor to invest it, then the share of Cassius in the surplus is just as much subject to the claims of his creditors as if it had been invested. Thus far we agree with the counsel for petitioner. Did

the executor have any discretion as to when and how much of such surplus income he would invest?

(1) It is too clear for argument that the executor had the power to have expended the whole of such income as it came to hand, and thus have prevented the accumulation of a surplus.

(2) He might have advanced to Cassius or his family, if he saw fit, such unexpended current income.

(3) Under item 9 the executor was given power to advance, at any time, "any portion of the final share of my estate to either of my grandchildren that would be due to them under the plan of distribution herein provided," subject only to the provisions made affecting the testator's wife. "In other words," quoting brief of counsel for the executor, "the executor may, in his discretion, at any time after the death of the widow, advance the entire estate to the grandchildren, and, at any time prior to her death, advance to them all, except sufficient to raise her annuity." This provision, whereby the executor, in his discretion, might turn over to others the whole of the estate out of which the income of Cassius was to arise, was not only inconsistent with the suggestion that the interest of Cassius in the income was a vested one, but serves to establish the proposition that the power to invest surplus income was a discretionary power. If we confine ourselves to the closing paragraph of item 8 of the will, it might well be contended that the executor had no discretion as to such surplus; but if we look at the will as a whole, and endeavor to ascertain the intent of the testator, we are led to the conclusion that the testator did not arbitrarily require the unexpended income to be invested for the benefit of Cassius, or Cassius and the members of his family. No power is anywhere given by the eighth item to trench upon such investments. If, however, we turn to item 2 of the codicil, we see that unexpended income is to be held in trust "until expended or otherwise disposed of, as provided in said item," "to the end that the same may be applied as my said executor shall deem best, and not otherwise, for the benefit of my son, Cassius, and his family." Speaking of the investment authorized by item 8, the testator continues by adding:

"Also, any portion of said share of income which may be invested for the benefit of Cassius shall likewise be held and kept in his own possession in trust by my said executor, the same to be expended for Cassius' benefit, or paid to him at such time, and in such amounts, as he (my said executor) may deem best; and not otherwise."

The interest of Cassius in such investment is that "portion of said share of income which may be invested for the benefit of Cassius." What is that portion? It is clearly not the whole of the unexpended income of one-half of the estate. The family of Cassius had interests in the income; each member an interest equal to that of Cassius. The testator did not contemplate that the whole of such surplus income should be invested for the exclusive benefit of Cassius. He speaks of the interest of Cassius "as any portion of said share." The share he refers to is the one-half of the net income set apart as a fund out of which the executor was to expend

the whole, or as much as he deemed judicious, for the support of Cassius and his family. The interest of Cassius is to be that "portion" of the surplus of that share which the executor shall invest for the benefit of Cassius exclusively. How is the portion of Cassius to be ascertained and separated from the portion to be held for the benefit of the others who compose his family? Looking to the whole scope of the will, we must conclude that this is, as is everything else beyond maintenance, left to the sound and uncontrolled discretion of the executor. He may pay over to Cassius, if he see fit, the whole of the share of income out of which he and his family are to be supported. This discretion is, as we have already seen, personal, and beyond legal coercion. It is easy, therefore, to gather that the executor has a discretion as to what shall be set off for investment exclusively for the benefit of Cassius. What shall be the fate of the portion invested for Cassius?

(1) It is to be observed that the executor is given the evident discretion as to the manner in which such fund shall be used.

(a) He may expend it for his benefit.

(b) Or he may pay it over to him in such sums, and at such times, as he may deem best, "but not otherwise."

(c) If it be neither expended nor paid over, then what? Will it pass to the distributees of Cassius, or under his will? Not one word occurs giving Cassius any further or other interest than such as the executor chose to give. The fund is to remain in the hands of the executor until he pays it over to Cassius or expends it for his benefit, or until the day of final distribution. It will then constitute unexpended income, and, as such, pass with the corpus of the estate. The beneficiaries, having no other interest in the income than a right to maintenance, have not a vested interest in the income. They are to be supported out of the income. The executor may spend so much as he deems proper. The rest, not being given to the testator, is per necessitate, when the trust ceases, to be held and distributed as part of the corpus. This is what the testator understood when in the ninth item of the will, and the fifth item of the codicil, he directs, upon the termination of the trust, a distribution of the "whole of my estate," or the "whole of my estate as it may then exist." The fair and rational interpretation of item 8, so far as it refers to the duty of investment, when construed in the light of the purpose of this testator as manifested by surrounding circumstances, and in the light of the whole scope of the will, particularly the second item of the codicil, was to make the investment of surplus income a matter of discretion not to be controlled by the court.

The other points suggested in the application for a rehearing have all been heretofore passed upon, and are covered by the opinion. Rule 29 provides that a petition for rehearing shall briefly and distinctly state its grounds, "and will not be granted or permitted unless a judge who concurred in the judgment desires it, and a majority of the court so determines." It may be added that, when such reargument is desired, it will be ordered without waiting for the application of counsel. *Public Schools v. Walker,* 9

Wall. 603. In the case above cited the chief justice said, as to such petition, that:

"When the court does not, of its own motion, order a rehearing, it will be proper for counsel to submit, without argument, as has been done in the present instance, a brief written or printed petition or suggestion of the point or points thought important. If, upon such suggestion, any judge who concurred in the decision thinks proper to move for a rehearing, the motion will be considered. If not so moved, the rehearing will be denied as of course."

That practice has been followed in the present case. The points upon which counsel have suggested a reargument have been considered. In view of the fact that each point was fully presented, both in oral and printed arguments, we are of opinion that no benefit would result from further argument.

Petition dismissed.